# United States Court of Appeals for the Federal Circuit

---

**JOHN D'AGOSTINO,**
*Appellant*

**v.**

**MASTERCARD INTERNATIONAL INCORPORATED,**
*Appellee*

---

2016-1592, 2016-1593

---

Appeals from the United States Patent and Trademark Office, Patent Trial and Appeal Board in Nos. IPR2014-00543, IPR2014-00544.

---

Decided: December 22, 2016

---

ROBERT GREENSPOON, Flachsbart & Greenspoon, LLC, Chicago, IL, argued for appellant. Also represented by JOSEPH CARL DRISH.

ELIOT DAMON WILLIAMS, Baker Botts LLP, Palo Alto, CA, argued for appellee. Also represented by ROBERT C. SCHEINFELD, New York, NY.

---

Before TARANTO, LINN, and STOLL, *Circuit Judges.*

TARANTO, *Circuit Judge.*

This case involves method claims of two patents that disclose processes for generating limited-use transaction codes to be given to a merchant by a customer for the purchase of goods and services, an objective being to enhance security for the customer by withholding the customer's credit card number from the merchant and using the transaction code to complete the transaction instead. In two inter partes review proceedings, the Patent Trial and Appeal Board of the United States Patent and Trademark Office decided that the disputed claims are unpatentable for anticipation and obviousness. Because the Board's decisions rest on an unreasonable claim interpretation, we vacate the decisions and remand for further proceedings.

I

John D'Agostino owns U.S. Patent Nos. 7,840,486 and 8,036,988. The '988 patent is a continuation of the '486 patent. Both patents disclose methods of effecting secure credit-card purchases by minimizing merchant access to credit card numbers. '988 patent, abstract; '486 patent, abstract. The written descriptions of the two patents are materially identical.

MasterCard International Incorporated filed two petitions with the PTO requesting inter partes review of the two patents under 35 U.S.C. ch. 31. Regarding the '988 patent, the Board, as delegee of the PTO Director, 37 C.F.R. §§ 42.4, 42.108, instituted a review of claims 1–10, 15–25, 27–33, and 35–38 for anticipation by U.S. Patent No. 6,422,462 to Cohen and of claims 11–14, 26, and 34 for obviousness over Cohen and U.S. Patent No. 5,826,243 to Musmanno (IPR2014-543). Regarding the '486 patent, the Board instituted a review of claims 1–15 and 22–30 for anticipation by Cohen and of claims 16–21 for obviousness over Cohen and Musmanno (IPR2014-544). After conducting the reviews, the Board cancelled all of the

reviewed claims as unpatentable on the grounds on which it instituted review. *MasterCard Int'l Inc. v. D'Agostino*, 2015 WL 5159950 (P.T.A.B. Aug. 31, 2015) (*'988 Decision*); *MasterCard Int'l Inc. v. D'Agostino*, 2015 WL 5159951 (P.T.A.B. Aug. 31, 2015) (*'486 Decision*). The Board's two final written decisions are materially identical for present purposes, so we hereafter cite only the *'988 Decision*.

As relevant here, the claims fall into two categories—those which involve "limiting a number of transactions to one or more merchants," *i.e.*, a "one or more merchants limitation," '988 patent, col. 8, lines 66–67; and those which involve "limit[ing] transactions to a single merchant," *i.e.*, a "single merchant limitation," *id.*, col. 11, lines 12–13. It being undisputed that the former are unpatentable *if* the latter are unpatentable, the Board relied only on the "single merchant" claims in its decisions, holding them unpatentable and, solely on that ground, also holding the "one or more merchants" claims unpatentable. *'988 Decision* at *8. We therefore address only the "single merchant" claims.

Claim 21 is representative of the "single merchant" claims:

21. A method for implementing a system for performing secure credit card purchases, the method comprising:

a) receiving account information from an account holder identifying an account that is used to make credit card purchases;

b) receiving a request from said account holder for a transaction code to make a purchase within a payment category that at least limits transactions to a single merchant, said single merchant limitation being included in said payment category

> prior to any particular merchant being identified as said single merchant;
>
> c) generating a transaction code utilizing a processing computer of a custodial authorizing entity, said transaction code associated with said account and reflecting at least the limits of said payment category, to make a purchase within said payment category;
>
> d) communicating said transaction code to said account holder;
>
> e) receiving a request to authorize payment for a purchase using said transaction code;
>
> f) authorizing payment for said purchase if said purchase is within said payment category.

'988 patent, col. 11, lines 5–27.

After construing the single-merchant limitation, which is step (b) in representative claim 21, the Board found that Cohen meets the single-merchant limitation through an embodiment that limits credit-card transactions to a particular chain of stores. *'988 Decision* at *8. The Board also found that Cohen discloses the step of defining and designating the "payment category" before the transaction code is generated. *Id.* at *9–10. The Board's unpatentability reasoning for both anticipation and obviousness relies critically on those two rulings; the Board did not rely on any independent alternative grounds for its decisions.

Mr. D'Agostino appeals under 35 U.S.C. §§ 141(c) and 319. We have jurisdiction to review the Board's decisions under 28 U.S.C. § 1295(a)(4)(A).

## II

The Board permissibly applied the broadest reasonable interpretation standard in this inter partes review proceeding. *See Cuozzo Speed Techs., LLC v. Lee*, 136 S. Ct. 2131, 2142 (2016); 37 C.F.R. § 42.100(b). "There being no dispute here about findings or evidence of facts extrinsic to the patent, . . . we conduct a de novo review of the Board's determination of the broadest reasonable interpretation of the claim language." *Straight Path IP Grp., Inc. v. Sipnet EU S.R.O.*, 806 F.3d 1356, 1360 (Fed. Cir. 2015). "The protocol of giving claims their broadest reasonable interpretation . . . does not include giving claims a legally incorrect interpretation." *In re Skvorecz*, 580 F.3d 1262, 1267 (Fed. Cir. 2009). Instead, "claims should always be read in light of the specification and teachings in the underlying patent," *In re Suitco Surface, Inc.*, 603 F.3d 1255, 1260 (Fed. Cir. 2010); the Board "should also consult the patent's prosecution history in proceedings in which the patent has been brought back to the agency for a second review," *Microsoft Corp. v. Proxyconn, Inc.*, 789 F.3d 1292, 1298 (Fed. Cir. 2015).

We note two limits on our review and ruling here. First, we separately address only the "single merchant" claims because the Board relied entirely on those claims for its decisions as to all claims. Second, as to Cohen, we consider only the portion, concerning a chain of stores, on which the Board relied. We reject the Board's bases of decision and remand. The Board on remand may consider other issues, *e.g.*, as to Cohen and as to the "one or more merchants" claims, that the parties have preserved.

## A

The single-merchant limitation clearly requires a separation in time between the communication of one piece of information and the communication of another. The authorizing entity, in being asked for a transaction code, is told that the number of merchants to be covered by that

code is one (no more, no less): a "payment category that at least limits transactions to a single merchant" is communicated to the authorizing entity. Critically, though, the "single merchant" must not be identified to the authorizing entity at that time: "said single merchant limitation being included in said payment category *prior to* any particular merchant being identified as said single merchant." Only later is the "particular merchant" identified, and the "particular merchant" is identified "*as* said single merchant." Identification of a particular merchant may take place, for example, at the subsequent step (f), when the transaction with that merchant is authorized; but it does not take place at the earlier step, when the transaction code for a defined payment category is requested. At that earlier step, the account holder sets the number of authorized merchants at one without identifying the one.

The specification refers to this process as one among several embodiments. "The payment category may also include a multi-transaction authorization wherein more than one purchase may be made *from one* or a plurality of different merchants, each of *which* may or *may not be identified by the customer* and pre-coded in association with the transaction code." '988 patent, col. 8, lines 18–22 (emphases added).

The prosecution history reinforces the evident meaning of the single-merchant limitation as requiring limiting, to one, the number of merchants that may use the transaction code, without identifying the merchant. In responding to a non-final rejection, Mr. D'Agostino distinguished the Langhans prior art as involving a list of identified approved merchants, stating: "*There is no disclosure in Langhans et al. that limits a transaction to a single merchant prior to any particular merchant being identified as the single merchant.*" J.A. 1427 (emphasis in original); *see also* J.A. 1366 ("*[C]omparing merchant information transmitted in an authorization request against vendor data stored in an approved vendor list and*

*determining if a particular vendor is on an approved vendor list* **does not** teach *a single merchant limitation* being included in a payment category *prior to any particular merchant being identified as said single merchant.*") (emphases in original). And in a reexamination of the '988 patent, Mr. D'Agostino said the following in distinguishing Cohen:

> [L]imiting to a particular store or chain of stores is not the same as limiting to a single merchant. A particular store or chain of stores limitation is an identity limitation whereas a single merchant limitation is a numerical limitation. That is, the only way a particular store or chain or stores limitation can be made is by identifying that store or chain of stores from other stores or chain of stores. Conversely, a single merchant limitation is not related to the particular identity of any store or chain of stores, rather it is a numerical limitation that limits use to only one merchant. Stated differently, a particular store or chain of stores limitation is limited to only the identified store or chain of stores, whereas a single merchant limitation is not limited by way of identity.

J.A. 2333–34. In the present appeal, this material is relevant as reinforcing the evident meaning of the claim language at issue, whether or not it would meet standards for disclaimer or disavowal. *See Cordis Corp. v. Medtronic AVE, Inc.*, 339 F.3d 1352, 1359 (Fed. Cir. 2003).

The single-merchant limitation thus requires, simply, that, when the transaction code is requested, the request limits the number of authorized merchants to one but does not then identify the merchant, such identification occurring only later. This is the claim-construction position that Mr. D'Agostino urged before the Board. *See, e.g.*, J.A. 5486, 5490, 8417. Contrary to MasterCard's contention, the doctrine of waiver does not preclude Mr.

D'Agostino from making any of the arguments he has made to us—*e.g.*, offering a new analogy, changing the emphasis on or ways of describing sources of support—in "defending the original scope of [his] claim construction." *Interactive Gift Express, Inc. v. Compuserve Inc.*, 256 F.3d 1323, 1346 (Fed. Cir. 2001).

The Board departed from or misapplied the above-stated clear meaning when—whether as a matter of claim construction or as a matter of application to Cohen, *see '988 Decision* at *6, *8 (making point in both ways)—it concluded that the claim limitation covers a situation in which the customer first seeks a transaction code for an identified "chain of stores" and, later, picks a specific store within that chain. *'988 Decision* at *8. The Board stated its point by way of an example it deemed within the claim: the customer could designate the "Target" chain of stores when obtaining a transaction code and only later choose a specific Target store at which to use such a code to obtain authorization of a purchase. *Id.*; *id.* at *9 ("[A] 'single merchant' can be the chain of stores, whereas the 'particular merchant' is a single store of that chain of stores."). The Board read Cohen as disclosing such a scenario and thus teaching the claim limitation at issue (for anticipation and obviousness). *Id.* at *8–*9.

The decisive problem with the Board's conclusion is that this scenario necessarily falls outside the single-merchant limitation. If Target is more than one merchant, then telling the authorizing entity to limit transactions to Target is not limiting the number of merchants (whose transactions are to be authorized) to one—and the Target scenario is for that reason outside the initial clause of the claim limitation. If Target instead is one merchant, then telling the authorizing entity to limit transactions to Target is not withholding the identity of the particular merchant—and the Target scenario is for that reason outside the second clause of the claim limita-

tion. Either way, the chain store example fails to satisfy a claim requirement.

The only way to avoid that straightforward logic would be to separate "single merchant" (in the first clause) from "particular merchant" (in the second clause). But, as we have discussed, the claim language of the single-merchant limitation does not allow that separation. Indeed, the second clause speaks expressly of "any particular merchant being identified *as* said single merchant."

For that reason, the Board's chain-store construction and/or finding for purposes of meeting the single-merchant claim limitation, for both anticipation and obviousness purposes, must be set aside. Because the decisive aspect of the Board's reasoning is contrary to the claim as reasonably construed, we need not and do not discuss other statements made by the Board en route to its conclusion, some of which MasterCard declines to defend.[1] In leaving those aspects of the Board's decisions unaddressed, we are not implicitly approving them. Nor, as we have already noted, are we deciding whether aspects of Cohen other than the chain-store discussion might satisfy the single-merchant claim limitation or whether the "one or more merchants" limitation might

---

[1] For example, although the Board seemed uncertain "how transactions are limited to a single merchant, without identifying any particular merchant," *'988 Decision* at *6, MasterCard has recognized at least one way: the customer specifies, as the single merchant, the next merchant seeking authorization with the transaction code. *See* Oral Arg. at 27:30–29:00. MasterCard also has correctly declined to defend the Board's apparent understanding of Mr. D'Agostino's remarks about scenarios involving Target and McDonald's made in the imprecise back-and-forth discussion at oral argument before the Board. *Id.* at *8.

call for a different analysis from that which governs the single-merchant limitation. In noting that these questions are not being decided here, we do not suggest answers one way or another.

## B

Mr. D'Agostino also challenges the Board's decisions on a separate ground. The Board agreed that "the claims require designating/selecting a payment category before the generation of the transaction code," and it found that Cohen meets that requirement. *'988 Decision* at *9. Mr. D'Agostino argues that Cohen does not disclose defining and designating the payment category before the transaction code (in Cohen, the credit card number) is generated. We reject that argument.

Substantial evidence supports the Board's finding as to Cohen in this respect. It is clear that, in at least one embodiment, Cohen discloses the user providing "what the single use or the customized credit card number is to be used for" in the same telephone call in which the customized card is requested. Cohen, col. 3, lines 50–53. Cohen also discloses that "the limited use nature of the card (either in a general sense or the specific limitations) . . . may . . . be printed on the card." *Id.*, col. 3, lines 22–26; *see also id.*, col. 3, lines 63–66 ("With respect to the customized card, the cards can . . . be preset for certain uses . . . ."). Those passages support the finding that Cohen teaches, among other things, that the limitations have been defined and designated before the card is generated. Although Mr. D'Agostino argues that the printing of the physical credit card does not necessarily occur simultaneously with the generating of the credit card number, he provides no citations to the record to suggest that the card number is generated before the card is printed. The evidence before the Board thus permitted the Board's finding on this issue. *See In re Jolley*, 308 F.3d 1317, 1320 (Fed. Cir. 2002) ("If the evidence in

record will support several reasonable but contradictory conclusions, we will not find the Board's decision unsupported by substantial evidence simply because the Board chose one conclusion over another plausible alternative.").

## III

For the foregoing reasons, we vacate the Board's claim construction and its findings of anticipation and determinations of obviousness. We remand for further proceedings not inconsistent with this opinion.

Costs awarded to Mr. D'Agostino.

**VACATED AND REMANDED**